UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 5:25-cv-03404-WLH-SP | | Date | December 23, 2025 |
|---|---|---|---|---|
| Title | *N.Y.V.D. v. Ernesto Santracruz et al* | | | |

Present: The Honorable    WESLEY L. HSU, United States District Judge

| Holidae Crawford | None |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:    (IN CHAMBERS) ORDER RE EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [2]**

The Court is in receipt of Petitioner N.Y.V.D.'s *Ex Parte* Application for Temporary Restraining Order (the "Application").  (Application, Dkt. No. 2).  On December 16, 2025, the Court issued an order preventing N.Y.V.D. from being removed from the Central District of California, pending resolution of the Application.  (Order, Dkt. No. 10).  On December 17, 2025, Respondents opposed the Application.  (Opp'n, Dkt. No. 8).  For the reasons explained herein, the Court **GRANTS** the Application.

## I.    BACKGROUND

The below factual background is taken from information contained in the Declaration of Zachary Nightingale, N.Y.V.D.'s counsel.  (*See generally* Declaration of Zachary Nightingale ("Nightingale Decl."), Dkt. No. 1-1).  Because the Petition for Writ of Habeas Corpus and TRO Application is unverified, the Court cannot rely on the facts therein.  (*See* Petition, Dkt. No. 1; *see also* Application).  While the Petition purports to be supported by verification from N.Y.V.D.'s counsel, N.Y.V.D.'s counsel failed to sign the verification under penalty of perjury.  To be verified, the petition must be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

petitioner under 28 U.S.C. § 2242.  *See* 28 U.S.C. § 2242 ("Application for a writ of
habeas corpus shall be in writing signed and verified by the person for whose relief it is
intended or by someone acting in his behalf").

N.Y.V.D. is an asylum-seeker from Nicaragua.  (Nightingale Decl. ¶ 2).  In 2022,
N.Y.V.D. fled Nicaragua "to avoid future persecution and torture" from the Nicaraguan
government, "which she actively and publicly opposed." (*Id*.).  On or about November
19, 2022, N.Y.V.D. entered the United States and presented herself to immigration
authorities.  (*Id*. ¶ 4).  That same day, DHS released her from custody and paroled her
pursuant to Immigration and Nationality Act ("INA") § 212(d)(5).  (*Id*.,  Ex. A).
N.Y.V.D.'s form I-385 confirmed that she was paroled and required to "report to the
Immigration and Customs Enforcement (ICE) Office near [her] final destination[, i.e.,
San Francisco,] within 60 days or face removal from the United States." (*Id*., Ex. B).  In
doing so, DHS necessarily determined that N.Y.V.D did not present a risk of flight or
danger to the community.  (*Id*. ¶ 3); *see also* 8 C.F.R. § 1236.1(c)(8) ("Any officer
authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not
described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and
(3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer
that such release would not pose a danger to property or persons, and that the alien is
likely to appear for any future proceeding.").   In 2023, N.Y.V.D. filed a Form I-589,
Application for Asylum and subsequently applied for and received a work authorization.
(Nightingale Decl., Ex. C).  At no point in time did NHS file a "Form I-862, Notice to
Appear ("NTA") and initiate removal proceedings against N.Y.V.D." (*Id*. ¶ 5).

Three years later, on November 24, 2025, N.Y.V.D. was detained by ICE during a
routine parole check-in.  (*Id*. ¶ 10).  ICE officers provided her with a copy of her arrest
warrant and that they were instructed under the administration's orders to "detain and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

expedite removal proceedings for applicants whose cases were pending without a hearing." (*Id*.). The Application further alleges that ICE officers told N.Y.V.D. that "she would see an immigration judge within five to seven days" within the detention center. (*Id*.).

Two days after her arrest, a Notice of Dismissal of Form I-589 stating that N.Y.V.D. was "placed in expedited removal," and that her "Form I-589 is dismissed as of 11/26/2025" was uploaded to her online USCIS account. (*Id*., Ex. D). The Notice of Dismissal of Form I-589 also stated that could still have her "claim of fear considered by an asylum officer through the credible fear screening process." (*Id*.). The word "parole" does not appear in the Notice of Dismissal of Form I-589. (*See id.*). N.Y.V.D. and her undersigned counsel did not learn about the Notice of Dismissal of Form I-589 until December 4, 2025. (*Id*. ¶ 12).

On December 10, 2025, N.Y.V.D. underwent a credible fear screening where an asylum officer conducted an interview to determine whether she had a credible fear of persecution or torture. (*Id*. ¶ 13). Two days later, USCIS issued a negative credible fear determination. (*Id*. ¶ 14). N.Y.V.D. was transferred to Adelanto ICE Processing Center in Adelanto, California, where she is awaiting a hearing before the Immigration Judge ("IJ") to challenge the negative credible fear determination. (*Id*. ¶¶ 11, 15).

On December 16, 2025, N.Y.V.D. filed a Petition for Writ of Habeas Corpus against respondents Ernesto Santacruz Jr., Acting Field Office Director of Los Angeles Office of Detention and Removal, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security; Todd M. Lyons, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; Kristi Noem, Secretary, U.S. Department of Homeland Security; Pam Bondi, Attorney General of the United States; and Fereti Semaia, Facility Administrator at Adelanto ICE Processing Center,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Adelanto, California ("Respondents").  (*See generally* Petition).  N.Y.V.D. alleged the
following causes of action:  (1) "Unlawful Re-Detention – Arbitrary and Capricious
Agency Action"; (2) "Violation of Procedures for Revocation of Release"; and
(3) "Procedural Due Process – Right to a Pre-Deprivation Hearing".  (*Id*.).  That same
day, N.Y.V.D. filed the instant Application.  N.Y.V.D. requests (1) immediate release
from detention on the conditions of her prior release, and (2) enjoinment of her re-
detention until she receives adequate notice and a hearing to determine the legality of her
re-detention.  (Application at 25).

**II.    DISCUSSION**

    **A.    <u>Legal Standard</u>**

A TRO may be issued upon a showing "that immediate and irreparable injury, loss,
or damage will result to the movant before the adverse party can be heard in opposition."
Fed. R. Civ. P. 65(b)(1)(A).  In determining whether to issue a TRO, courts apply the
four Winter factors (the "*Winter* Factors"), which also guide the evaluation of a request
for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm
in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest.
*See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg
Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001)
(explaining that the analysis for a TRO and a preliminary injunction are "substantially
identical").  If the Court issues a TRO, it must also issue an order to show cause why a
preliminary injunction should not issue.  L.R. 65-1.

    **B.    <u>Analysis</u>**

    *1. Exhaustion of Administrative Remedies*

Respondents contend that N.Y.V.D. must exhaust her administrative remedies
before she may proceed with her habeas petition.  The INA requires exhaustion of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

appeals on final removal orders. *See* 8 U.S.C. § 1252(d)(1). Here, there has not been a final removal order, and N.Y.V.D challenges only her detention rather than a final removal order.

Nevertheless, where Congress has not clearly *required* exhaustion, courts may impose it as an act of "sound judicial discretion." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "When exercising our discretion, we must apply exhaustion principles 'in a manner consistent with congressional intent and any applicable statutory scheme.'" *Wang v. Reno*, 81 F.3d 808, 814 (9th Cir. 1996) (*quoting McCarthy*, 503 U.S. at 144.).

In *Wang v. Reno*, the Ninth Circuit held that district courts have properly exercised jurisdiction over due process claims even where a petitioner has not exhausted his administrative remedies in connection to his excludability. *See Wang*, 81 F.3d at 814. ("Where Congress has not specifically mandated exhaustion, we conclude that consistent with congressional intent and the INA, the district court properly exercised jurisdiction over [Petitioner's] due process claim even though he had not exhausted administrative remedies with respect to his excludability."). There, the Ninth Circuit found the government's argument that the INA requires exhaustion to be meritless, because the petitioner's due process claim does not implicate the INA.

Likewise, the Court finds Respondents' exhaustion argument to be unpersuasive here. Here, N.Y.V.D.'s Fifth Amendment violation, as opposed to a statutory entitlement to asylum, falls outside the INA's scope. Because N.Y.V.D.'s application does not involve a deportation order or implicate the INA, N.Y.V.D.'s challenge to her detention does not require her to exhaust any administrative remedies prior to seeking judicial relief for violations of her due process rights.

### 2. *Expedited Removal*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Respondents oppose the issuance of temporary injunctive relief and maintain that detention is "mandatory" under expedited removal procedures set forth at 8 U.S.C. § 1225(b)(1). Specifically, Respondents argue that N.Y.V.D. was detained when she crossed the Southwest border without authorization. (Opp'n at 5; *see also* Nightingale Decl."), Ex. A). Citing 8 U.S.C. § 1225(b)(1)(A), Respondents further argue that N.Y.V.D.'s application should be denied because it fails to demonstrate that she "was illegally detained or has received insufficient process."

Under 8 U.S.C. § 1225(b)(1)(A), certain "inadmissible" noncitizens—particularly, (1) those "arriving" at the border or (2) those not admitted or paroled *and* who cannot affirmatively show that they have been continuously present in the United States for two years—may be removed by immigration officers "without further hearing or review" unless they indicate an intent to apply for asylum or express a fear of persecution or torture. *See* 8 U.S.C. § 1225(b)(1)(A). In *Castellon v. Kaiser*, a sister court held that a "person who has been paroled without first having been placed in expedited removal cannot be designated for expedited removal." 2025 WL 2373425, at *4 (E.D. Cal. Aug. 14, 2025). In support of this holding, the court cited *Coalition For Humane Immigrant Rights, v. Noem*, which states:

> Noncitizens may be eligible for expedited, rather than section 240, removal only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission. 8 U.S.C. § 1225(b)(1)(A)(i); *see id*. § 1182(a)(6)(C), (a)(7) (grounds of inadmissibility). Among that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens "arriving in the United States"; and (2) noncitizens who "ha[ve] not been admitted or paroled into the United States" and cannot affirmatively show that they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)–(iii). The statute permits the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

> Attorney General (who has since delegated this authority to the DHS Secretary) to designate the population of noncitizens within that second category who will be subject to expedited removal. And that designation lies within the Secretary's "sole and unreviewable discretion." *Id*. § 1225(b)(1)(A)(iii); see 8 C.F.R. § 235.3(b)(ii) ...

2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025). The court in *Coalition* concluded that the statute "forbids the expedited removal of noncitizens who have been, at any point in time, paroled into the United States." 2025 WL 2192986, at *22.

Other district courts have likewise indicated that a noncitizen who is not an arriving noncitizen and who was initially released on his or her own recognizance cannot subsequently be designated for expedited removal. *See Valencia Zapata v. Kaiser*, 2025 WL 2741654, at *9 n.4 (N.D. Cal. 2025) ("Because Petitioners were released on their own recognizance after their initial detention at the border, they are also ineligible for expedited removal proceedings as they have been 'paroled' within the meaning of section 1225(b)(1)."); *Aviles-Mena v. Kaiser*, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025) ("The Court concurs with other courts that have found that section 1225(b)(1) 'does not authorize designation for expedited removal of any noncitizen who has, at any point in time, been paroled into the United States.'"); *Garcia v. Andrews*, 2025 WL 2420068, at *4-5, *9 (E.D. Cal. Aug. 21, 2025) ("[S]ection [1225(b)(1)] specifically precludes expedited removal as to any alien placed on parole"). This Court finds these cases persuasive.

*Coalition*'s statutory construction and the cases that follow it foreclose Respondents' attempt to designate N.Y.V.D. for expedited removal, given that it expressly "forbids the expedited removal of noncitizens who have been, at any point in time, paroled into the United States." *Coalition*, 2025 WL 2192986, at *22. Here, DHS could have placed N.Y.V.D. in expedited removal proceedings when she first arrived in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

the United States more than three years ago, but it did not.  Instead, she was conditionally paroled for more than three years pursuant to INA § 212(d)(5), which permits noncitizens to be "temporarily paroled" on "a case by for urgent humanitarian reasons or significant public benefit, any noncitizen applying for admission to the United States."  INA § 212(d)(5); 8 U.S.C. § 1182(d)(5).  When DHS made that decision, it foreclosed expedited removal proceedings for Petitioner.

The Court agrees with the analyses presented in *Coalition* and other district courts that 8 U.S.C. § 1225(b)(1) specifically precludes expedited removal as to any noncitizen placed on parole.  Therefore, the INA precludes DHS from placing Petitioner in expedited removal proceedings.

### 3.  Revocation of Parole

The INA permits that, "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b).  Under Section 212.5(e)written notice of the termination of parole is required except where the immigrant has departed or when the specified period of parole has expired.  *See* 8 C.F.R. § 212.5(e).  Section 212.5(e)(2)(i) states "parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole."  8 C.F.R. § 212(e)(2)(i). Section 212.5(e)(2)(i) further states that "[w]hen a charging document is served on the alien, the charging document will constitute written notice of termination of parole."  *Id*. Although the parole regulation does not define "charging document," other sections in the same chapter of the Code of Federal Regulations define it as follows:

> Charging document means the written instrument which initiates a proceeding before an Immigration Judge.  For proceedings initiated prior to April 1, 1997, these documents include an Order to Show Cause, a Notice to Applicant for Admission Detained for Hearing before

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

> Immigration Judge, and a Notice of Intention to Rescind and Request for
> Hearing by Alien. For proceedings initiated after April 1, 1997, these
> documents include a Notice to Appear, a Notice of Referral to
> Immigration Judge, and a Notice of Intention to Rescind and Request for
> Hearing by Alien."

8 C.F.R. § 244.1; *id*. § 1003.13.

Respondents assert that they provided N.Y.V.D. with proper notice via a charging document. Specifically, Respondents argue that "[w]hile she was temporarily paroled into the United States due to a lack of available immigration detention bedspace, noncitizens whose parole has been terminated 'on notice'— which includes the issuance of a charging document, such as an expedited removal order." Unlike a Notice to Appear, an expedited removal order does not meet the definition of a charging document, because the order does not "initiate[] a proceeding before an Immigration Judge." 8 C.F.R. § 244.1. Even if, *arguendo*, an expedited removal order could serve as sufficient notice pursuant to 8 C.F.R. § 212(e)(2)(i), Respondents failed to provide the Court with sufficient evidence to show that the removal order was properly served upon N.Y.V.D. Moreover, Respondents did not provide a copy of the expediated removal order allegedly served on Petitioner. As such, the Court cannot ascertain when N.Y.V.D's parole was terminated and when she was "restored to the status that … she had at the time of parole," much less whether Petitioner was given written notice of those facts *Id*.

Upon review of the record, the only document submitted to the Court which might constitute "notice" was the Notice of Dismissal of Form I-589. Even assuming, *arguendo*, that Respondents properly served the Notice of Dismissal of Form I-589 (though the record lacks evidence on this point), the Notice of Dismissal of Form I-589 does not include any information on when N.Y.V.D.'s parole was revoked or that her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

status was returned to that at the time she was granted parole.  Accordingly, N.Y.V.D. did not receive proper written notice of her parole revocation.

### *4.* **The Winter Factors Support Granting N.Y.V.D.'s Application**

Having established the above threshold questions, the Court now turns to the *Winters* factors to determine whether a TRO should issue.  N.Y.V.D. primarily argues that absent a change in circumstances, ICE cannot revoke her conditional parole and arrest her.  (Application at 5).  Without this Court's intervention, N.Y.V.D. asserts she "finds herself in civil detention, deprived of her due process, facing the imminent threat of her removal."  (*Id*. at 4).  With each additional day of confinement, N.Y.V.D. claims she endures "irreparable harm including deprivation of her constitutional rights, emotional distress, and economic hardship."  (*Id.* at 5).

***Likelihood of success on the merits.***  N.Y.V.D. is likely to succeed on the merits of her Fifth Amendment procedural due process claim.  Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Although ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after a noncitizen is released from custody, she has a protected liberty interest in remaining out of detention.  *See Romero v. Kaiser*, WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Because N.Y.V.D. has a protected liberty interest, the Court must apply the three-part test established in *Mathews v. Eldridge* to determine what procedures are constitutionally sufficient to protect her liberty interest.  In deciding what process is due, courts consider: "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

### a)      Liberty Interest

The first factor heavily favors N.Y.V.D.  "Freedom from imprisonment" is the Due Process Clause's lodestar.  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).   As stated above, N.Y.V.D. was paroled into the United States in 2022.  (Petition ¶ 3).  N.Y.V.D. has a substantial private interest in being out of custody, which includes continuing to "build her life—she filed her application for asylum, obtained work authorization and worked lawfully, entered into a romantic relationship with her U.S. citizen boyfriend, whom she plans to marry, connected with family, and even fostered relationships with co-workers and other union members, including SEIU leadership."  (Application at 11-12).  Further, in paroling her, DHS had to determine that she "would not pose a danger to property or persons" and was "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).  The record does not suggest any of these circumstances have changed nor have Respondents argued such.  Thus, N.Y.V.D. has a liberty interest in her continued freedom until Respondents execute her removal.

### b)      Risk of Erroneous Deprivation

The second factor also heavily favors N.Y.V.D.  As stated above, there is a high risk that the government would erroneously deprive—and already has erroneously deprived—N.Y.V.D.'s liberty interest absent a "pre-detention hearing in front of a neutral

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

arbiter." *Valencia Zapata*, 2025 WL 2741654, at *10.  Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community.  *See Zadvydas* 533 U.S. at 690–91.  N.Y.V.D. was paroled into the United States and was necessarily determined to present no risk of flight risk or danger to the community.  Respondents do not dispute that there has been no change in N.Y.V.D.'s circumstances that would warrant a finding that she is either a flight risk or danger to her community.  Moreover, the risk of wrongful deprivation is particularly high in this case given the evidence that N.Y.V.D. has complied with the terms of her release and Respondents do not suggest otherwise.

      c)    **Government's Interest**

The final factor also weighs in favor of N.Y.V.D.  Like other district courts have determined, the government's interest in re-detaining N.Y.V.D without a pre-detention hearing is slight, "because [the government] previously made the determination to release [her], and there is no evidence in the record of any changed circumstances [for the government] to reconsider its parole determination." *Valencia Zapata*, 2025 WL 2741654, at *11 (collecting cases).

Because all three *Mathews* factors favor N.Y.V.D., the Court concludes that she has demonstrated a likelihood of success on the merits on her procedural due process claim.

***Irreparable harm.***  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  As explained above, N.Y.V.D. has likely been unlawfully re-detained and, since re-detention, has been "ripped away from the opportunity to be with her loved ones, work, and heal from the past harms that she fled." (Application at 23).  "The Ninth Circuit has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). The Court thus finds that N.Y.V.D. will be immediately and irreparably harmed by the continued deprivation of her liberty.

*Balance of equities and public interest.* Finally, the balance of the equities and public interest analyses "merge when the government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (quotations omitted). Moreover, the public's interest "in the efficient allocation of government's fiscal resources favors granting" the TRO here. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017). With the "staggering" price to the public of immigration detention, *id.,* the public has a strong interest in ensuring its taxpayer dollars are not used for detention in obvious disregard of controlling federal law. *See Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) ("[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue.").

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** N.Y.V.D.'s Application and **ORDERS** as follows:

      1.    Respondents are enjoined from detaining N.Y.V.D. unless they provide her with a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

by clear and convincing evidence that N.Y.V.D. is a flight risk or a danger such that her physical custody is required;

2. N.Y.V.D. is not required to secure a bond, as the government has provided no evidence of costs it will incur in releasing N.Y.V.D. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("[A court] may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining [their] conduct.");

3. Respondents are enjoined from relocating N.Y.V.D. outside of the Central District of California pending final resolution of this matter;

4. Respondents are **ORDERED** to show cause in writing no later than seven (7) days from the date of this Order why the Court should not issue a preliminary injunction. N.Y.V.D. may file a Reply no later than ten (10) days from the date of this Order;

5. A hearing on whether a preliminary injunction should be issued is set for **January 6, 2026, at 2:30 p.m.**; and

6. The Parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order on or before January 2, 2026. The joint status report shall also address whether the habeas petition is moot.

**IT IS SO ORDERED.**